IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United States of America

v.                                         Case No. 1:24-CR-510-CRC

Walter Lee Goodman

**Defendant's Sentencing Memorandum**

Mr. Goodman comes before the court facing a sentence more than twice as long as any other sentence he has served. Though his conduct is serious and warrants punishment, he did not harm anyone. A sentence at the bottom of the recommended guidelines adequately accomplishes the purposes of punishment without overly incarcerating Mr. Goodman for a non-violent crime.

**Legal Standard**

Following the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005), the Federal Sentencing Guidelines were deemed advisory rather than mandatory, and federal appeals courts were tasked with reviewing criminal sentences for reasonableness. The Court further clarified the sentencing process in *Rita v. United States*, 551 U.S. 338, 347-48 (2007), emphasizing that district courts must first correctly calculate the applicable Guidelines range before considering the factors set forth in 18 U.S.C. § 3553(a). The court must then evaluate whether the proposed sentence is consistent with those factors, without assuming the reasonableness of the Guidelines range. *Gall v. United States*, 552 U.S. 38, 50 (2007).

A core principle of federal sentencing is that each defendant must be treated as an individual, with every case evaluated based on its unique circumstances. As expressed in *Koon v. United States*, 518 U.S. 81, 113 (1996), this approach allows for the consideration of factors that may either lessen or increase the severity of the crime and the appropriate punishment. This principle is especially important in a case such as this, where co-defendants have starkly differing levels of culpability.

Imposing individualized sentences requires courts to consider the advisory guideline range, while still observing the tradition of judicial discretion in sentencing in considering other factors that the Guidelines do not. As Justice Stevens observed, the Sentencing Commission has not established specific standards or recommendations for considering many individual characteristics, including education, mental or emotional condition, medical condition (such as substance use disorders), employment history, family ties, and other personal factors. *Rita v. United States*, 551 U.S. 338, 364-65 (Stevens, J., concurring). However, § 3553(a) explicitly authorizes sentencing judges to consider these factors when determining a fair and just sentence given the unique circumstances of the case and the individual being sentenced.

In determining an appropriate sentence, the court must consider not only the Guidelines but also the other statutory factors outlined in 18 U.S.C. § 3553(a), including: the nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553(a)(1)); the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment,

afford adequate deterrence, protect the public, and offer appropriate correctional treatment (§ 3553(a)(2)); the kinds of sentences available (§ 3553(a)(3)); the need to avoid unwarranted disparity among defendants with similar records and conduct (§ 3553(a)(6)); and the need to provide restitution to victims (§ 3553(a)(7)). Ultimately, § 3553(a) mandates that the court impose a sentence that is "sufficient, but not greater than necessary" to fulfill the objectives of federal sentencing.

**Mr. Goodman's history and characteristics call for a sentence at the low end of the applicable guideline range.**

Mr. Goodman was raised in a single-parent household in relative poverty in the district. His family relied on public assistance, and his mother struggled with drug use early in his life. Mr. Goodman does not have any kind of a relationship with his father, who abandoned him early in life. Until recently, Mr. Goodman did not recognize the struggles that his family went through in his early life—as many of his peers went through similar issues. For example, when Mr. Goodman was interviewed thirteen years ago, he reported that he was spoiled in his youth. However, his family often had their utilities cut out and he witnessed routine violence in his neighborhoods. His recognition of his childhood trauma demonstrates that he is in a better position to overcome it. A further example—Mr. Goodman first used drugs in middle school. Under any normal circumstance, giving drugs to a child that young would normally be called child abuse. But for whatever reason, society tends to place the fault on those who use drugs—even young boys living in an environment in which drug use is abundant.

Mr. Goodman is no stranger to violence. Two of his siblings were shot and killed within the past six years. While growing up, he witnessed five shootings, and he lost his best friend to gun violence. And Mr. Goodman himself has been shot twice. His injuries from those shootings cause him frequent nerve pain, for which he is prescribed medication. Although trafficking in firearms and possessing firearms contributes to the district's problem with gun violence, it is understandable why a man with such a significant history of witnessing violence might feel the need to arm himself.

Most of Mr. Goodman's criminal history is related to his poverty, his traumatic history of experiencing violence, or his prior substance abuse history. For example, at age eighteen, he attempted to take a $10 bill from someone he though was sleeping on the subway. The person was, in fact, an undercover officer engaged in a sting operation. A year later, Mr. Goodman stole a vehicle that he saw running. Both of these crimes demonstrate the hallmark of juvenile behavior of one not thinking through the logical consequences of one's actions. But Mr. Goodman is not alleged to have engaged in any similar conduct since those actions. Of course, he is facing sentencing for an assault that occurred while in custody. However, given that he is pending sentencing for that case, Mr. Goodman is not in a position to speak about it here. However, the DC Jail is a dangerous place, and many of counsel's clients report a fear of violence and the pressure to arm oneself with a weapon to defend against or to preempt other's violent conduct.

In fashioning sentences for deterrent effect, court's often look to how much time a person has served on prior sentences—increasing the sentence when the conduct is more egregious and when prior terms of incarceration do not appear to have worked. Although Mr. Goodman has served sentences on revocations of release, his largest single term of incarceration was 32 months of incarceration. A sentence of 77 months is more than twice as long as that period. Additionally, data from the sentencing commission (JSIN) indicates that for similarly situated defendants, the mean sentence imposed was 71 months and the median was 77 months. Further, 44% of people received a sentence below the guideline range.  The charts below demonstrate those statistics.



**Note:** The figure includes the 1078 defendants reported to the Commission (1) whose primary guideline was §2K2.1, with a Final Offense Level of 21 and a Criminal History Category of VI, after excluding defendants who received a §5K1.1 substantial assistance departure; and (2) the defendant received a sentence of imprisonment in whole or in part. Cases missing information necessary to complete the analysis were excluded from this figure.



**Sentence Imposed Relative to the Guideline Range for Defendants in Selected Cell**
Fiscal Year 2020-2024

■ Within Range    ■ Downward Departure or Variance    ■ Upward Departure or Variance    ■ §5K1.1 Substantial Assistance

**Note:** The figure includes the 1144 defendants reported to the Commission whose primary guideline was §2K2.1, with a Final Offense Level of 21 and a Criminal History Category of VI, including defendants who received a §5K1.1 substantial assistance departure. Cases missing information necessary to complete the analysis were excluded from this figure. Defendants who received a §5K1.1 substantial assistance departure are included in this analysis but are excluded from other analyses below. As such, the number of defendants included in this analysis may exceed the number of defendants in other analyses. Total percentages displayed in the figure may not sum to 100% due to rounding.

## Conclusion

Mr. Goodman's conduct warrants a significant sentence. However, sentencing him within the guidelines—even at the bottom end—will punish him more severely (doubly so) than he has ever been punished before. And though his conduct was serious, it was not violent. Further, Mr. Goodman's history of experiencing violence helps to understand (but not to condone) why someone in his position would feel the need to arm himself with a firearm. Mr. Goodman respectfully requests the court impose a sentence of 77 months.

Respectfully submitted,

/s/ Benjamin  Schiffelbein

625 Indiana Ave NW, Ste 550

Washington, DC 20004

Benjamin_Schiffelbein@fd.org